# Florence Gas, Electric Light and Power Co. v. Hanby, Receiver, &c.

*Bill in Equity to enforce a Mechanic's and Materialman's Lien, and to compel the Specific Performance of a Contract.*

1. *Multifariousness.*—A bill in equity is not rendered multifarious by the addition of a prayer for alternative relief, when the averments of such bill are not duplex, but are appropriate and sufficient to warrant relief under either of the special prayers. Multifariousness can not be predicated solely upon the variant prayers with which a bill may conclude.

2. *Appointment of a receiver upon a bill filed to dissolve a corporation.*—When a bill filed by stockholders to dissolve a corporation, as provided by statute (Code, § 1683), contains averments which show a necessity for the appointment of a receiver for the corporation pending the proceedings for dissolution, a chancery court may appoint such receiver.

[Florence Gas, Electric Light and Power Co. v. Hanby, Receiver, &c.]

3. *Powers of receiver appointed pending proceedings for the dissolution of a corporation.*—When a bill which seeks the dissolution of a corporation contains averments showing special grounds for the appointment of a receiver pending such proceedings, the receiver to be appointed by the court is authorized, not only to execute and perform the existing contracts of the corporation, but also to enter into and carry out new contracts in behalf of the company.

4. *Appointment of a receiver; can not be questioned in collateral proceedings.*—On a bill filed by the receiver of a corporation, who was acting under an appointment made after the dissolution of the company (Code, §§ 1683-86), the validity of his former appointment as receiver, pending the dissolution proceedings, can not be assailed; said attack being made in a collateral proceeding.

5. *Power of receiver of dissolved corporation to carry out existing contract.*—While a receiver, appointed under section 1686 of the Code has no authority, as a general rule, to carry out and perform existing contracts of the dissolved corporation, and can only be empowered to perform such conditions as are prescribed by said section, he may, nevertheless, complete the execution of an existing contract, when such execution is necessary to the discharge of the duties and powers expressly imposed and conferred by such statute.

6. *"As soon as possible" in a contract means within a reasonable time.* The stipulation in a contract for the completion of work "as soon as possible," requires the work to be completed within a reasonable time, or within such time as is reasonably necessary, under the circumstances, to do what the contract required to be done.

7. *Waiver of right to rescind a contract.*—The right to rescind a contract for unreasonable delay in the completion of the work agreed to be done is waived and lost by the acceptance of the work done in its incomplete condition, and the devoting of the same to the objects for which it was built.

8. *Specific performance of a contract; when not enforceable.*—When, on a bill filed by the receiver of a dissolved corporation, seeking the specific performance of a contract made between such corporation and another company, it is shown that in the contract the corporation, of which the complainant is the receiver, agreed to construct an electric light plant for the defendant corporation, and to pay off debts due from the defendant corporation, some of which were secured by a mortgage, and that the defendant agreed to issue first mortgage bonds to the construction company, to secure the debt arising from the performance of the work stipulated, with leave to take the bonds in absolute payment after a certain time, a specific performance of such a contract can not be decreed, when the bill contains no averment that the debts due from the defendant to third parties, which were agreed to be paid by the construction company, had been paid, nor an averment of an offer, or even a readiness or willingness to pay such debts; the failure of the construction company to perform its part of the contract by paying the debts, making a specific perform-

ance of the contract by the defendant, by the delivery of first mortgage bonds, impossible.

9. *Partial performance of work, and acceptance thereof; sufficient for establishment of mechanic's and material-man's lien.*—Although a contract, as originally made, was not severable, and there could have been no recovery for work done under it, except upon full performance of the contract, still, if there has been a part performance of the contract, and the owner has accepted it in its approximately completed condition, and is using it for the objects for which it was built, the law implies a promise on his part to pay what the work done is reasonably worth, and the contractor is entitled to enforce this debt by a mechanic's and material-man's lien.

10. *When right to a mechanic's and material-man's lien not affected by act of February 12, 1891.*—When a contract is entered into, and the work and materials for which a lien is sought to be enforced were done and supplied, and a bill to enforce such lien is filed, prior to the passage of the act of February 12, 1891, (Acts 1890-91, p. 578), providing for mechanic's and material-man's lien, the right to the enforcement of such lien is not affected by said act.

11. *When authority of a corporation is to be presumed.*—When a bill is filed by the receiver of a dissolved corporation for the enforcement of a mechanic's and material-man's lien, and the specific performance of a contract for certain work done, it is to be presumed, in the absence of any averment to the contrary, that the construction company was authorized by its charter to enter into and perform the contract involved in said suit.

APPEAL from the Chancery Court of Lauderdale.

Heard before the HON. THOS. COBBS.

The bill in this case was filed by S. M. Hanby, as receiver of the Southern District Telegraph & Electric Company, against the Florence Gas, Electric Light & Power Company, and prayed to have enforced upon the property of the defendant a mechanic's and material-man's lien in favor of the plaintiff, and also for the specific performance of a contract entered into by the two corporations. The material facts of the case are sufficiently stated in the opinion.

The respondent demurred to the bill of complaint, and assigned the following grounds: 1st. The bill shows that S. M. Hanby was appointed receiver of the Southern District Telegraph & Electric Company upon the filing of a bill by the stockholders of said corporation for its dissolution under sections 1683 *et seq.* of the Code of Alabama; and that upon his appointment, the said receiver was authorized and empowered to collect, by suit or otherwise, all of the debts of said corporation,

2

and to complete all its outstanding contracts, which said corporation had made for the erection and construction of electric plants; and the bill shows that said appointment was unauthorized, illegal, null and void, and that no subsequent action of the court could render the appointment of said Hanby valid, or vest in him the power and authority claimed. 2d. That as the appointment of said Hanby as receiver was made immediately upon the filing of the bill praying for dissolution, and before a decree of dissolution of the corporation was rendered, the said appointment was illegal, unauthorized by the statute under which the petition to dissolve the corporation was filed, and that, therefore, said Hanby was not legally receiver of said corporation, and was not authorized to institute the present suit. 3d. Said bill shows that, on the filing of the bill for dissolution of the corporation, the said Hanby was appointed the receiver of said corporation with power to collect all the debts and to complete all outstanding contracts of said company that it may have made for the erection and construction of electric plants, &c., and that upon the decree rendered dissolving the corporation that said Hanby's receivership and his powers thereunder contained were continued. This was not authorized under the statute by virtue of which the original bill for dissolution was filed, and his appointment was, therefore, null and void, and the court could not by subsequent decree legalize its action. 4th. The contract between the Southern District Telegraph & Electric Co. and the respondent, was that the plant contracted to be erected should be completed as soon as possible, and the bill shows that said plant was not erected at the time said Hanby was appointed receiver—more than a year after said contract was made; and said bill fails to show that said plant could not have been completed sooner, or that the Southern Dist. Tel. & Elec. Co. was not guilty of unreasonable delay in completing the said contract. 5th. Under the said contract above mentioned the plant was to be completed as soon as possible, and the bill fails to show any reasonable cause why said plant was not erected or completed before the dissolution of the Southern Dist. Tel. & Elec. Co., or the appointment of said Hanby as its receiver. 6th. Said bill shows that the Southern District Telegraph & Electric Co. did not erect and complete said

electric plant as they contracted to do with the respondents, as shown by the contract, and that, therefore, the defendant was released from all obligations arising under said contract by the inexcusable delay and negligence of said corporation to comply with its contract. 7th. The bill shows that the Southern District Telegraph & Electric Co. went into the hands of a receiver more than a year after it had entered into a contract with the defendant, and that at the date of the appointment of the receiver it had failed to comply with said contract, and the bill fails to show any satisfactory legal reason or excuse for its failure to comply with said contract, or that it could not, by ordinary diligence, have completed said contract before the expiration of one year and before the appointment of a receiver. 8th. The bill shows that Hanby was appointed receiver of the Southern District Telegraph & Electric Co. upon a bill being filed under sections 1683 *et seq.* of the Code of Alabama. Under the provisions of said statute the receiver could not be vested with power to complete the unexecuted contracts of the corporations, and the decree of the court vesting in him such power was null and void, and, therefore, the receiver had no authority to complete said contract made by the defendant. 9th. The said bill shows that at the time of the dissolution of the Southern District Telegraph & Electric Company it was involved, and that it went into the hands of a receiver on account of its inability to collect its debts and the stringency of the money market, and that it had no means to complete its contract with the defendant. 10th. The said bill does not show that the said Southern District Telegraph & Electric Company has ever offered or proposed by its officers or agents, or any one authorized to represent it, to complete its contract with the defendant, and that S. M. Hanby had no power, by virtue of his appointment as receiver, to complete said contract. 11th. The bill shows that the said Southern District Telegraph & Electric Co. in its contract with the defendant contracted to pay at once the money due by the defendant to the Westinghouse Electric Company for the purchase of its plant, and the debts then owed by the defendant, and the bill fails to show or allege that the said Southern District Telegraph & Electric Co., or its receiver, has paid said moneys as it contracted to do, and, therefore, the receiver

is not in a position to ask for specific enforcement of the contract with the defendant. 12th. Under the contract with the defendant the Southern District Tel. & Elec. Co. was to pay the amount due the Westinghouse Electric Co., and the debts due by the defendant, which the bill shows were due at the time of the execution of said contract, but the bill fails to allege said payments were made by said Southern District Tel. & Elec. Co., or its receiver. 13th. The bill shows that the purpose of the Southern District Tel. & Elec. Co. agreeing to pay said moneys due by the defendant was to enable the defendant to pay and satisfy a mortgage due by it on its plant held by the Westinghouse Elec. Co. and the debts pressing at the time, so that it could execute a deed of trust on all of its property to secure bonds which were to be issued and delivered to said Southern District & Electric Co., as required in the contract, and that the lifting of the mortgage held by the Westinghouse Electric Co. on the plant of the defendant was a condition precedent to the issuance of said bonds and to the delivery of them to the Southern District Telegraph & Electric Co., and the bill fails to show that this condition precedent has been complied with. 14th. The bill presents inconsistent alternative claims for relief, in that it prays for the enforcement of a lien in favor of the complainant, and also for the specific performance of the contract set forth in an exhibit to the bill. 16th. Neither said bill nor the exhibits thereto allege or show when the sum claimed to be due by the defendant to the Southern District Tel. & Elec. Co. became due and payable. 17th. The bill fails to show that the plaintiff filed its claim or lien in the probate office of Lauderdale county, claiming a lien on the property of the defendant, within six months after the indebtedness accrued. 18th. The bill shows that both the Southern District Telegraph & Electric Co. and S. M. Hanby, as receiver of said company, filed in the office of the probate court of Lauderdale county, Alabama, statements in writing claiming liens on the property of the defendant. 19th. Neither said bill nor the exhibits thereto show when the indebtedness claimed against the defendant accrued. 20th. The averments of the bill and the exhibits thereto show that complainant has no lien either as a mechanic or a material-man as provided by law. 21st. The bill and exhibits show

that the account claimed to be due to complainant was due more than six months before the filing in the office of the probate court of Lauderdale county the claims and accounts, preparatory for the enforcement of the lien. 22d. The complainant has a plain, adequate and complete remedy at law.

On the submission of the cause on the demurrers to the bill, the chancellor sustained the 16th and 17th grounds, and overruled all the other grounds of demurrer. The defendant now brings this appeal, and assigns as error the decree of the chancellor overruling the several grounds of demurrer.

EMMET O'NEAL, for appellant.—There was no excuse shown in the bill for the long delay on the part of the Southern District Telegraph & Electric Company in not completing the electric light plant for the defendant. In that contract time was made the essence of the contract by the defendant. The insolvency and the dissolution of the construction company was no sufficient excuse for the non-performance of the contract.—*Jones v. Anderson*, 82 Ala. 302, 2 So. Rep. 911; *Smith v. Brady*, 72 Am. Dec. 442; *Mizell v. Burnett*, 69 Am. Dec. 745. The construction company having violated its contract, the defendant was authorized to rescind the same.—*Hewlett v. Alexander*, 87 Ala. 193, 6 So. Rep. 49. The receiver, who is the complainant in this case, was not in a position to ask for the specific performance of the contract. The defendant was not required by the contract to issue bonds until the mortgage given by it to third parties had been satisfied by the receiver's company, and the other debts had been paid. The construction company failed to perform its part of the contract, and rendered the specific performance of the contract by the defendant corporation impossible, nor did the bill contain averments that the said debts had been paid, or any averment offering to pay said debts. A fundamental rule of equity pleading requires that every fact essential to the complainant's right to maintain a bill must be stated therein.—*Christian v. Amer. Freehold Land Mortg. Co.*, 89 Ala. 198, 7 So. Rep. 427. The bill does not show that it was within the authorized powers of the Southern District Telegraph & Electric Company to construct the electric plant, which it agreed to build for the defendant. If the contract was *ultra vires*, then no right of action can be maintained.—

*Chewacla Lime Works v. Dismukes*, 87 Ala. 347, 6 So. Rep. 122 ; *Eufaula v. McNabb*, 67 Ala. 588 ; *City Council v. Montgomery & Wetumpka Road Co.*, 31 Ala. 76.

MOUNTJOY & TOMLINSON, *contra.*—(1.) The appointment of a receiver in a pending suit, where the court has jurisdiction of the parties and subject matter, can not be collaterally assailed.—*Comer v. Bray*, 83 Ala. 217, 3 So. Rep. 554 ; High on Receivers, § 225 ; Wait on Insolvent Corporations, § 245 ; *Keokuk Northern Line P. Co. v. Davidson*, 13 Mo. App. 561 ; *Attorney Gen'l v. Guardian Mut. Life Ins. Co.*, 77 N. Y. 272 ; *Richard v. Peoples* 81 Ill. 551. (2.) Without the aid of statute, the chancery court has the power to appoint a receiver pending litigation.—*Myer v. Johnston*, 53 Ala. 237. (3.) The unauthorized appointment of a receiver may be cured by subsequent legal apppointment.—*In re Stonebridge*, 13 N. Y. 770. (4.) The term "as soon as possible," in a contract, is considered by courts to mean within a reasonable time.—*Hinds v. Kellogg*, 13 N. Y. Sup. 922 ; *Hydraulic Co. v. McHaiffie*, 29 Moak, Eng. R. 102 ; Benjamin on Sales (Bennet's Ed.), § 687 ; *Arthur v. Wright*, 10 N. Y. Sup. 368. (5.) A chancery court has authority to empower a receiver to carry on the business where such course is necessary to protect and preserve the property.—Wait on Insolv. Corp., § 214 ; *Pond v. Cook*, 45 Conn. 30 ; *Blake Crusher Co. v. New Haven*, 46 Conn. 473 ; *Cooke v. Town of Orange*, 48 Conn. 409. (6.) If the part of a contract to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable.—3 Am. & Eng. Encyc. of Law, p. 917, and note ; *Lucesco Oil Co. v. Brewer*, 66 Pa. St. 351 ; *Quigley v. DeHaas*, 82 Pa. St. 267, 273 ; *Scott v. Kittanning Coal Co.*, 89 Pa. St. 231 ; *Johnson v. Johnson,* 3 B. & P. 162 ; *Robinson v. Green*, 3 Met. (Mass.) 159 ; *Mayfield v. Wadsley*, 3 B. & C. 357 ; *Mayor v. Pyne*, 3 Bing. 285 ; *Perkins v. Hart*, 11 Wheat. (U. S.) 237, 251 ; *Withers v. Reynolds*, 2 B. & A. 882 ; *Sickles v. Patterson*, 14 Wend. (N. Y.) 257 ; *McNight v. Dunlop*, 4 Barb. (N. Y.) 36, 47 ; *Snook v. Fries*, 19 Barb. (N. Y.) 313 ; *Carleton v. Woods*, 8 Foster (N. H.) 290 ; *Robinson v. Snyder*, 25 Pa. St. 203 ; 3 Amer. & Eng. Encyc of Law, p. 925 ; *Snow v.*

*Alley*, 11 B. E. Rep. (Mass.) 764.    (7.)   An alternative prayer does not of itself render a bill multifarious.—*Lyons & Co. v. McCurdy*, 90 Ala. 497, 8 So. Rep. 52 ; *Coulton v. Ross*, 2 Paige, 396 ; s. c. 2 N. Y. Ch. Rep. 959 ; *Harden v. Boyd*, 113 U. S. 756 ; *Kilgore v. N. O. Gas Light Co.*, 2 Woods 144 ; Mitford & Tyler Eq. Plead., 285 ; 1 Daniels Chan. Pr., 385. (8.) The receiver of a corporation dissolved by the chancery court under the provisions of the Code, providing for the voluntary dissolution of corporations by the chancery court, has the same rights as the corporation, but suit must be brought by or against him.—*Comer v. Bray*, 83 Ala. 217, 3 So. Rep. 554 ; *Nelson et al. v. Hubbard*, and *Adams Cotton Mills v. Dimmick*, 96 Ala. 238, 11 So. Rep. 428. (9.) When a contract is payable in something other than money, and the payer fails to make payment in such article, then the price becomes payable in money at once on such default.—*Church v. Feterow*, 2 P. & W. (Pa.) 301.    (10.)  A statutory lien arises by virtue of the contract, and the furnishing of the materials or the construction of the building.    It is implied by law, and no reservation or stipulation is necessary.—Phillips on Mechanics Liens, §§ 159, 118, 182, 202 ; *Hill v. Newman*, 38 Pa. St. 141 ;  *Cooper v. Cleyhorn*, 50 Wis. 113 ; *Hubbell v. Scheyer*, 15 Abb. Pr. (N. S.) 300 ; *Powder Co. v. Byrnes*, 12 Abb. Pr. 469 ; 21 Cen. L. J. 306 ; *Hill v. Railroad Co.*, 11 Wis. 214 ; 72 Mo. 664 ; 74 Mo. 374 ; *Chase v. James*, 10 Hun. (N. Y.) 506 ; *Hogan v. Cushing*, 49 Wis. 169 ;  *Helm v. Chapman*, 5 Pac. Rep. 352 ; *Davis v. Alford*, 94 U. S. 545 ; *Mining Co. v. Collins*, 104 U. S. 176. (11.) On failure of builder to complete building within the specified time, the  proper  rule seems to be that the builder should be allowed to sustain his suit on the contract, subject to defendant's equitable right to show any damages he may have sustained by the delay by  way of set-off  or as cause of action in a cross-suit. Loyd  on Law of Building & Buildings, p. 58 ;  *Lucas v. Godwin*, 3 Bing. (N. C.) 737 ;  *Smith v. Gugerty*, 4 Bard. 614 ; *Lindsay v. Gordon*, 13 Me. 60 ; *Parker v. Thorold*, 16 Beav. 59.

McCLELLAN, J.—The appellee, Hanby, as receiver &c., is the complainant in the present bill, to which the appellant, the Florence Gas, Electric Light & Power Co., is respondent.  The corporation of which complainant

is now receiver entered into a contract on July 6, 1889, with the respondent corporation to construct and erect complete for the latter an electric light plant at Florence, and equip the same with specified machinery, appliances, &c., for lighting the town of Florence with electricity. The contract contains a stipulation for the erection of the plant "as soon as possible." The construction company also undertook in said contract to pay an outstanding indebtedness of the Florence company to the Westinghouse Electric Company, amounting to $2,200, which was secured by a mortgage on an existing plant of the former, "thereby lifting" said mortgage, which existing plant, it is fairly inferable, was to be incorporated with and made use of in the construction of the new plant; and also to pay the current indebtedness of said company, amounting to $2,000. For all this the construction company was to receive twenty-six thousand dollars ($26,000), payable at certain specified rates of discount on face value in bonds of the Florence company, which were to be "secured by a mortgage or deed of trust on the entire plant and lot [on which a 'power house' was to be erected] of sufficent face value to net the above amount ($26,000), said plant and lot to be free of all incumbrances." It was further stipulated that the bonds should not be issued to the construction company in excess of the work done or machinery furnished by it, the implication being that partial issues and deliveries of bonds were to be made during the progress of construction. The contract contains also the following provision: "Said bonds to be delivered to us to be used by us as collateral security for six months, unless sooner sold; but either you [the Florence company] or ourselves shall have the privilege of selling said bonds at par. If said bonds shall not be sold before the expiration of six months, then we shall have the option of extending the time for the sale of said bonds until they can be sold, or of taking them in payment of the debt of $26,000. If taken in payment of the debt, you are to issue to us enough bonds bearing 7 per cent interest to net us at 90 cents on the dollar $26,000, or you will furnish us enough bonds bearing 6 per cent interest to net us $26,000 at 85 cents on the dollar." It thus appears that, contrary to the first provision of the contract in this connection noted above, the contract did not contemplate

absolutely that bonds should be taken in payment of the $26,000, but that in the first instance the construction company should take the bonds as collateral with power to sell and apply the *proceeds* to the debt within six months, and that after the lapse of that time the construction company was to have the option either to extend the time of sale indefinitely—until the bonds could be sold—*or* to take them in payment of the debt. The bill avers that on August 5, 1890, a majority of the stockholders of said Southern District Telegraph & Electric Company, representing more than three-fourths of the capital stock thereof, filed a bill in the chancery court for a dissolution of said corporation according to law, and the present complainant, upon special grounds set out and shown in said bill, was appointed upon the filing thereof receiver of all the corporate property and assets of said company, and empowered and authorized to collect by suit or otherwise all the debts due to said company, and to complete all the outstanding contracts which said company had made for the erection of plants, &c.; and that on the 20th January, 1891, upon a decree rendered in the cause dissolving said corporation, the complainant's receivership and his powers thereunder were continued, and he was further appointed receiver upon the dissolution of said corporation as provided by law, with all the powers and authority given him as such receiver by law.

The averments of the bill as to what has been done and offered to be done by the construction corporation and the complainant as receiver thereof in performance and discharge of the contract with the Florence company, and as to the latter's attitude in respect of the matter of performance, are contained in the third paragraph thereof, which is as follows: "That said Southern District Telegraph & Electric Co., immediately undertook and proceeded to perform said work and erect said plant, that it had substantially completed said work and erected said plant, when the same was turned over to and accepted by respondents, who are now operating the same in lighting the city of Florence. That after substantially completing the work, as aforesaid, owing to the stringency of the money market and its inability to collect its debts, said Southern District Telegraph & Electric Company went into the hands of a receiver. That your

orator, the said receiver, at once notified said Florence Gas, Electric Light & Power Company that he would go on, as he was authorized and empowered by the chancery court, and complete said contract. That your orator sent necessary workmen to Florence to complete all of said work, and had material shipped there to complete the same, but defendant refused to allow said work to be proceeded with, claiming that they had a right to rescind said contract.'' The bill further avers the filing of verified statements of the claim and debt of the construction company against the Florence company for work and labor done and materials furnished by the former under the contract in the office of the judge of probate of Lauderdale county, with a view to fastening mechanic's and material-man's lien on certain described property of the latter company and upon the improvements thereon, &c. Copies of these statements are exhibited to the bill, and assignments of demurrer, numbered 16 and 17, which went to their sufficiency under the statute, were sustained. No appeal is taken by complainant, and this ruling of the chancellor is not presented for review, nor does this record present any question as to whether the statements can be amended in the particular of their adjudged insufficiency, and we are neither called upon nor authorized to decide whether they are so amendable or not.

What we have quoted from the bill is all shown by it as to the performance of the contract on the part or in behalf of the construction company, or as to the time within which what was done at all by said company, in work and labor or in supplying materials, &c., was performed. It does not appear from the bill whether the debts which the Florence company owed at the time of contract made, and which thereby the construction company undertook to pay, namely, $2,200 to the Westinghouse Co., and $2,000 to other creditors, have been paid or not by the construction company, or otherwise.

The leading prayer of the bill is for the enforcement of the debt claimed to be due the construction company, about $24,000, as a mechanic's and material-man's lien against the Florence company and on certain property of that company. There is also an alternative prayer for specific performance of the contract through a decree compelling the defendant corporation to issue

to complainant as receiver &c., the bonds stipulated for in the contract. All demurrers to the bill, except the two referred to above, were overruled, and from the decree in that behalf this appeal is prosecuted by the respondent company.

1. We may as well say here as elsewhere that there is no merit in the contention that the bill was rendered multifarious by the addition of the prayer for alternative relief. The averments of the bill are not duplex. All of them would have been proper, in respect, at least, to the rule against multifariousness, had there been only one, and either one, of the special prayers we have stated; and multifariousness can not be predicated solely upon the variant prayers with which a bill may conclude.— *Lyons v. McCurdy*, 90 Ala. 497, 8 So. Rep. 52.

2. The dissolution of the Southern District Telegraph & Electric corporation and the final appointment of complainant as receiver thereof must be referred to sections 1683 *et seq.* of the Code. The section named provides for the filing in the chancery court of a *petition* by a majority of the stockholders, owning three-fourths of the stock, setting forth the names and residences of all the stockholders, &c., as nearly as practicable all the property of the corporation, and that it is the wish of the petitioners to dissolve the corporation. If no other relief than dissolution is sought, and only this statutory petition is filed, the court is without jurisdiction to grant, by interlocutory or final decree or order, any relief beyond or other than that prescribed by the statute; that is, it could only decree dissolution, and *upon* the passing of that decree appoint a receiver under and with the powers prescribed in section 1686 of the Code. But it may be that there is necessity for other relief than this; it may be that pending the proceeding for dissolution it is necessary, on account of the misfeasance or malfeasance of the directors and officers of the corporation, for the power of the the court to be exercised to the preservation of corporate property and rights by such interlocutory orders or process as will meet the necessity and conserve the end in view. In such case, should the stockholders be forced to file a bill for the temporary relief to which they are entitled, and at the same time institute in the same court a separate proceeding

for the final relief of dissolution to which the inter-
locutory relief is merely an incident? We think not.
To the contrary, we can conceive of no reason why the
statutory petition may not be incorporated with a bill al-
leging the facts authorizing dissolution and the facts
which show a necessity for the intervention of the court
pending the proceeding for dissolution, to the end that
the property of the corporation may be saved *pendente
lite* for administration by the receiver to be appoint-
ed on final decree under the statute. Good pleading in-
deed—the rule against multiplicity of suits—would seem
to absolutely require that these purposes, the dissolution
of the corporation and appointment of a receiver under
the statute, and the preservation of the property *ad in-
terim* for its final disposition by the receiver, should be
sought and accomplished in one and the same bill. The
present bill contains averments which show that the bill
filed by the stockholders was of this character ; that bill,
it is alleged, contained averments of special grounds for
the appointment of a receiver of the corporation pending
the proceeding under the same bill for a dissolution there-
of. Upon such a bill the chancery court had jurisdic-
tion, aside from statutory provisions, of the matter of
appointing a receiver pending final action on the prayer
for dissolution and consequent appointment of a receiv-
er under the statute.—*Meyer, Trustee &c. v. Johnston &
Stewart, Trustees*, 53 Ala. 237. And if the appointment was
merely irregular and erroneous—it could not have been
*void* in this state of case—its validity can not de ques-
tioned by the present respondent in this purely collateral
proceeding.—*Comer v. Bray*, 83 Ala. 217, 3 So. Rep. 554.
The assignment of demurrer which sought to impeach
the original appointment of complainant to be receiver
of the Southern District Telegraph & Electric Company
were properly overruled. As to the entire regularity of
the second appointment—that made upon final decree of
dissolution—the averments of the present bill leave room
for doubt.

3. The first appointment, that made "on special
grounds" upon the filing of the bill for *ad interim* relief
and dissolution, was referable to the general jurisdic-
tion of courts of chancery to appoint receivers *pendente
lite;* and in the exercise of this jurisdiction it was clearly
within the competency of the court not only to empower

the receiver to execute and perform existing contracts of the corporation, but even to enter into and carry out new contracts in behalf of the company.—Beach on Receivers, §284; 20 Am. & Eng. Encyc. of Law, p. 154.

4. A somewhat more difficult question arises as to the power of a receiver appointed under section 1686 of the Code—the power of this receiver under his final appointment on decree of dissolution—to carry out and perform existing contracts of the corporation. By that section the powers which may be invested in a receiver are to take possession and control of all the property and assets of the corporation, to collect by suit or otherwise all the debts due thereto, sell its property and make conveyances thereof, and to proceed without suit to sell any or all of the debts and assets of the corporation at public sale for cash, or on such terms as in his judgment the interest of the parties may require. These statutory provisions mark the limits of the court's competency to confer powers on the receiver of a dissolved corporation. But these powers when conferred by the decree involve and carry with them such power as may be implied from the general object and spirit of the statute, or as are incidental to the authority expressly given.—Beach on Receivers, § 434; *Runyon v. Bank*, 3 Green Chancery (N. J.) 480; *Emblee v. Shideler*, 36 Ind. 423. In the case at bar the receiver asserts the power and authority to perform and discharge the obligations resting on the corporation by the terms of a contract of force at the time its corporate entity was destroyed by the decree of dissolution. That power is not expressly given in the statute, nor is the court thereby expressly authorized to confer it on the receiver. Can it be implied from the general object and spirit of the statute, or as an incident to the powers which are expressly conferred or allowed to be conferred on the receiver? We need not respond to this inquiry in the precise form in which it is put. The facts of the present case do not require it. These are, as has been indicated, that the construction company had entered into a contract to erect a plant for the Florence company for $26,000, and had substantially, in the sense of nearly, completed the erection thereof when the dissolution was had, but no part of the agreed price therefor had been paid. Upon dissolution it was necessary to the collection of this claim against the Florence company

that the contract to erect and construct the plant should be fully executed and the plant completed, or to show that an offer so to do had been made in good faith and declined. Very clearly in equity and good conscience, especially when reference is had to the fact that the Florence company had accepted the plant so far as erected and it was being made to subserve the purposes of its erection, here was a debt in some amount owing to the dissolved corporation. This debt the receiver was empowered to collect by suit or otherwise. The performance or offer to perform in full the contract which had already been nearly completed was a condition precedent to a demand for the payment of this debt in full. Without it the debt could not be collected. Without it the receiver could not execute the power which the law and the decree expressly gave him, and discharge the duty resting on him. The performance of the unexecuted part of the contract, or a readiness and offer to perform, was clearly within the object and spirit of the statute and incidental to the power which is thereby expressly vested in the receiver. While not deciding that a receiver under this statute has authority to perform all existing contracts of the corporation, we hold that the complainant was empowered to complete the execution of the contract with the Florence company, such execution being necessary to the discharge of the duties and powers which were expressly imposed and conferred on him, and that his offer so to do and the declination thereof must be accorded the same effect in this case as had there been no dissolution and the offer had been made by the construction corporation itself.—Wait on Insolvent Corporations, § 214; *Pond v. Cook,* 45 Conn. 130.

5. The stipulation in the contract for the completion of the work contracted for "as soon as possible" is to be construed to require the erection and construction of the plant complete within a reasonable time, or within such time as was reasonably necessary, under the circumstances, to do what the contract required to be done.—1 Am. & Eng. Encyc. of Law, p. 777, note 1, and authorities there cited.

As we have seen, the bill avers that the construction company, immediately on the making of the contract, undertook and proceeded to perform the work and to erect

the plant contracted for, that it had substantially completed said work and erected said plant, when the same was turned over to and accepted by the Florence company, and that said company at the time of filing the bill was operating the same in lighting the city of Florence, thus subserving the purposes of its erection. The bill further shows, however, that the plant was not entirely completed according to the specifications of the contract, but that complainant was ready and willing and had offered to complete it    It can not be affirmed, on this state of averment, that the bill shows that there was any violation of the compact in respect of the time in which the work that was done was in fact performed ; and even if there had been unreasonable delay on the part of the construction company in that regard the fault was condoned, and any right the Florence company might otherwise have had to rescind the contract was waived and lost by its acceptance of the work done, and of the plant in its then approximate completed condition, and devoting the same to the objects of its erection. This, we think, gave the construction company a claim for the value of work and labor done and materials supplied prior to and up to the time of the acceptance, and whatever damage the Florence company sustained from a.subsequent unreasonable delay on the part of the construction company or this complainant to fully perform the then unexecuted parts of the constract is, at most, matter for recoupment. And this conclusion is aided, in this instance, by reference to that provision of the contract, which clearly contemplates that payments were to be made to the construction company from time to time as the work progressed.

6. It is to be conceded, that the bill contains no averment that the debts due from the Florence company to third parties, which were to be paid by the construction company, had been paid, and no averment of an offer, or even a readiness or willingness, to pay the same. It may be be taken, therefore, as showing a violation of the contract in this respect by the construction company. What is the effect of this infraction upon the relief sought? It is, in our opinion, fatal to the prayer for specific performance. The bonds which the contract stipulates for, and which the prayer for specific performance would involve the issuance of, were to be secured by a mortgage

or deed of trust on the property of the Florence company, which property was to be free from all incumbrances. The debt due the Westinghouse company was secured by a mortgage on this property or a part of it. Until this debt was paid and this mortgage "thereby lifted", the Florence company could not, even had it desired so to do, have issued the bonds stipulated for, because the property which was to be pledged to secure them was incumbered, and this incumbrance was the result of the fault and failure of the construcion company to pay off the Westinghouse mortgage as it had agreed to do. The prayer for specific performance, therefore, in effect invokes the jurisdiction of chancery to compel the defendant to do an act which the failure of the construction company to perform its contract has left impossible of performance. There can be no equity in such a demand.

7. This consideration, however, has no application in respect of the prayer of the bill looking to the enforcement of complainant's claim for work done and materials furnished, &c., as a lien on the property of the defendant corporation. The part performance, averred in the bill, and defendant's acceptance thereof suffice to entitle complainant to recover for the work and labor done and materials furnished, even if it be conceded that the contract was not originally severable, and that but for such acceptance complainant could have recovered nothing except upon full performance of the entire contract, or a part performance with a readiness and offer to perform in full, seasonably made and declined by the defendant. This upon the principle that, "if one party, without the fault of the other, fails to perform his side of the contract in such manner as to enable him to sue upon it, still if the other party has derived a benefit from the part performance, it would be unjust to allow him to retain that without paying anything. The law, therefore, generally implies a promise to pay what it is reasonably worth."—3 Amer. & Eng. Encyc. of Law, pp. 920–922; *Hayward v. Leonard*, 7 Pick. (Mass.) 181; *Kirkland v. Oates*, 25 Ala. 465; *Merriweather v. Taylor*, 15 Ala. 735; *Bell v. Teague*, 85 Ala. 211, 3 So. Rep. 861.

8. On this theory, that partial performance by the construction company and the acceptance of the plant so partially completed and the use thereof by the Florence company raises up an implied contract on the part

of the latter to pay for the work done and the materials furnished, the complainant is entitled to a money recovery, even if it be assumed that the original contract provided for payment in bonds only, against the defendant; and as an incident of the transaction, involving the facts alleged in the bill, an inchoate lien attached to such of defendant's property as comes within statutory terms in favor of the complainant, which, if perfected as provided by law, may be enforced by bill in chancery.—Code, §' 3040.

9. If it were necessary to go into the question at all on this appeal, we should be inclined to hold that the primary obligation of the defendant under the express contract was to pay the construction company $26,000 in money, that the bonds were in the first instance to be issued to the latter company only as collateral security for the payment of this money, or as a means of raising the money for application to the debt, that whether they should ever be taken in payment depended upon an election on the part of the construction company so to do, and that so far from such election having been made, the present bill and its leading purpose to enforce a money claim by subjecting property to its satisfaction may be considered an efficacious and binding election, conditioned only on complainant's right to make it—a right which, as has been indicated, we should hold he had—on the part or in behalf of the construction company not to accept the bonds in payment at all.

10. The contract involved here was entered into, the work and materials for which a lien is sought to be enforced were done and supplied, the lien therefor attached and was perfected, if perfected at all, and the present bill to enforce the lien was filed prior to the act of February 12, 1891, providing for mechanics' and materialmen's liens and repealing certain sections of the Code of 1886. Acts 1890–91, p. 578. The right now asserted is not affected by that act. If it existed at all, it was then a vested right, which a repeal of the statute could not destroy or impair, and which it would not be held to impair, if that were within legislative competency, in the absence of an indication of a legislative purpose to give it retrospective operation; and it is now to be worked out and effectuated under the laws of force when the suit was commenced.

3

11.   It is to be assumed, in the absence of any aver-
ment to the contrary, that the construction company
was authorized by its charter to enter into and perform
the contract involved in this case.

What we have said will suffice to indicate the grounds
of our conclusion, that the decree overruling the several
demurrers to the bill insisted on in argument is free
from error.

Affirmed.